# COUNTY OF LINCOLN.

## LIME ROCK BANK *versus* JOHN L. MALLETT.

A bank received interest in advance for a further period upon a note which it had discounted, and which was about to mature, and caused the word "renewed" to be written thereon: — *Held*, that the advance interest thus received was a valuable consideration, and that the time of payment of the note was enlarged.

The liability of a surety upon a note is terminated by a valid agreement to enlarge the time of payment without his knowledge or consent.

A person whose name appears as maker upon a note, but who is in fact a surety only, and is well known to be such to the payee, may, in a suit upon the note, avail himself of the defence that the time of payment has been enlarged without his knowledge or consent and his liability thereby terminated.

Nor would it be otherwise, where the rule and usage of the bank, well known to the surety, were to take no accommodation notes, so written, but that it required all notes to be joint and several, and regarded all the promisors as principals so far as the bank was concerned. He could still avail himself of the enlargement of the time of payment without his knowledge or consent as a valid defence.

The part payment of a note by the surety, after his liability has thus terminated, with money belonging to his principal, will not revive his liability for the balance, although at the time of such payment he gave no intimation that the money was not his own.

At the trial he may show that the money thus used in part payment belonged to the principal on the note.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J., presiding.

ASSUMPSIT on a note of the following tenor: —

"East Thomaston, Jan. 28, 1845.

"Value received, we jointly and severally promise to pay the president, directors and company of the Lime Rock Bank, or order, one hundred and seventy-five dollars in sixty days."

(Signed,) "Henry McIntosh,
"John L. Mallett,
"John Spofford."

Lime Rock Bank *v.* Mallett.

On the back of the note were the following indorsements:

        "May  28.    Received. — Renewed.

        "Sept. 28.      "        "

        "Nov. 28.       "        "

1846.  "Jan. 28.       "        "

        "Mar. 28.       "        "

        "May  28.       "        "

        "July 28.       "        "

"1847.  Sept.—Received $10,37, and interest till August 28th last, by J. L. Mallett."

This suit was against Mallett only, and commenced April 14, 1849. The general issue was pleaded, and a brief statement filed, alleging that defendant and Spofford were sureties for McIntosh; that the same was known to the bank when the note was discounted; and that the bank had extended to him the times of payment indicated by the said amounts, without the knowledge or consent of defendant, and against his will.

Evidence tending to show that he was surety, and that it was known to the bank, was received, against plaintiffs' objections.

It appeared that the money was first discounted in 1840; and that in January, 1845, the directors instructed the cashier to require new notes of all parties having overdue notes; that he called on Mallett, and he wished the cashier not to call on Spofford, and said he would get a new note with the same signatures; and if the bank would discount such a note, he would father the new note as his own, as between the bank and himself, and provide for it and see that it was paid; requesting his proposition to be communicated to the president, and let him know the result. This was done, and the cashier was authorized to take the new note, which was done.

There was evidence tending to show that the bank had, before January, 1845, established a rule and corresponding usage, or practice, to take no accommodation note, so written, but to require all notes to be joint and several, and all the promisors, so far as the bank was concerned, were dealt with

and treated as principals, and that defendant was a customer at the bank and had notes there.

Evidence tending to show that McIntosh paid the interest at the several times indicated by the indorsements, was given, and some to the contrary.

It was in evidence, that the payment of September, 1847, was made by defendant, and the indorsement made without any intimation that the money was not his own, though proof was given that it was in fact the money of McIntosh, paid by him to be put on to the note.

The plaintiffs contended to the jury, that if they were satisfied of the existence of the rule and usage testified to, and Mallett had knowledge of it when the note was made, and that its discount was procured in conformity with said rule and usage, then defendant, as between the bank and himself, might well be regarded and held as a principal as to the bank, and he would not now be at liberty to assume and claim an exemption from liability as a surety.

And further, if, when this note was discounted, it was upon defendant's proposition; and that the terms of that proposition were, that if the bank would discount the note, defendant would, as between himself and the bank, father the note as his own; and that defendant and bank then so understood that defendant was to be regarded and treated as a principal between them, irrespective of the exemptions which a surety might claim, then it would not be competent for defendant to relieve himself now from liability on the ground that he was merely a surety and the bank knew it.

The plaintiffs' counsel further contended to the jury, that the indorsements made on the back of the note, did not establish a valid agreement on the part of the bank to extend time of payment, or the fact, that it had extended the time of payment.

He also contended, that if the payment and indorsement of September, 1847, made by Mallett, were made without any disclosure that the money was not his own, and without communicating in any way that he was surety and not a principal promisor, that would be sufficient evidence to authorize the

jury to find that defendant knew of, assented to, and acquiesced in the payments and extensions thereon indorsed; and that such payment made and indorsement procured by defendant on the note was in law a recognition of his indebtedness and liabilities.

The jury were instructed, that if the defendant held the relation of surety only upon the note in suit, and that fact was known to the plaintiffs, and the time for its payment was extended, for a good and valid consideration, beyond that stated in the note, without the knowledge and consent of the defendant, the defendant would be discharged; that the usage and practice of the bank to take notes signed by the promisors, without any distinction thereon, who was principal and who was surety, would not alone be sufficient to enable them to hold a surety, known by the plaintiffs to be such, after they had extended the time of payment beyond that specified in the note, by an agreement with the principal, without the knowledge and consent of the surety, even if the surety had knowledge of such usage and practice. But the jury were further instructed, that if the defendant, though he was a surety on the note for which the one in suit was given, and known by the plaintiffs to be so, yet, if by an arrangement with McIntosh, the debt, as between the defendant and McIntosh, became that of defendant, the latter would not be discharged by the extension procured by McIntosh, though without his knowlege and consent; that if the defendant was discharged before the indorsement made Sept. 1847, he was not made liable by that indorsement, if the money then paid was the money of McIntosh; that the words on the back of the note, "received, renewed," with the date, imported an extension for consideration.

The jury returned a verdict for defendant, and, in answer to questions proposed by the Court in writing, found that defendant procured none of the indorsements to be made save that of Sept. 1847.

*Lowell & Foster*, in the opening argument for plaintiffs, contended that the defendant was not a surety in relation to

the bank, that they dealt with him as a principal, and the contract was mutual in that character. Under the rule and usage of the bank, this note was discounted, and the relation of surety cannot exist without the consent of all the parties to the contract. The evidence did not show that the plaintiffs accepted defendant as a surety; nor did it tend to prove this; it only proved the relations between the signers, in which plaintiffs had no interest. The plaintiffs' complaint was, not that the presiding Judge permitted the defendant to show what his *real relation* and liability to them were, but that he permitted him to show what they were to McIntosh and Spofford, in reference to a contract to which they were not parties. This is where the instructions were erroneous. The evidence only showed a contract between defendant and *third* parties. As to the plaintiffs, no such relation existed. 1 Pothier on Contracts, 176; Burge on Suretyship, p. 16, c. 2.

*Gould,* for defendant.

The testimony admitted as to the suretyship of defendant, was strictly in accordance with the decision in this case in 34 Maine, and of *Carpenter* v. *King,* 9 Met. 511.

So also was it proper for defendant to show that the payment by him, made in September, 1847, was for McIntosh, to rebut any presumption which might otherwise arise, that he thereby assented to the former extensions of the note.

As to several things contended for by plaintiffs' counsel to the jury, they are of no importance — they are no ground of exceptions. No request of such kind was made of the Court, to give instructions, and the correctness of the instructions given is now the only question open.

In regard to the usage, the language of the Judge is definite, guarded and restricted. It does not cover all the ground contended for by plaintiffs' counsel to the jury, nor all that *some* of the testimony tended to exhibit. Nothing was said about the effect of a *custom* or usage to treat and deal with all the promisors as principals. If instructions upon this point had been *desired,* they should have been *asked* for. There can be no doubt of the accuracy of those given.

But the custom or usage of the bank was conformed to by defendant. The note corresponded to it. But nothing in the rule authorized them to disregard the provisions of law and still hold defendant. The bank engrafted a new provision upon the note, and then claim to hold him whom they knew to be only a surety. There is nothing in the rule or usage to authorize the bank to put additional burdens upon defendant.

There is no proof of any usage to extend the time of payment on their notes, and it can have no effect on this case. Upon the plaintiffs' hypothesis, to make this usage of any avail, it should have been proved that they extended the time of payment to one of the promisors without notice to the others. Besides, no usage can be invoked to control a well settled rule of law.

As to the effect of the partial payment by Mallett in September, 1847, of McIntosh's money; would that revive his liability?

The debt was the debt of McIntosh, the defendant had been discharged of his conditional liability, and the statute of frauds would seem to interpose a legal bar.

The act was one of neighborly kindness. *Ulmer* v. *Reed*, 11 Maine, 293.

*Thacher*, in reply. Although what the plaintiffs' counsel contended for before the jury is no ground of exception, yet it will not be denied that instructions are to be given to the jury in accordance with law, and corresponding with the facts arising in the case. That in relation to the usage we complain of. It was not such as the nature of the case and the rights of plaintiffs demanded.

The usage was to treat all the promisors as *principals;* it did not relate to the form of the notes merely, but extended to all that related to them, after due, as well as before, and so long as they remained unpaid. If they were to be so dealt with, why not also as to a renewal, or an extension of the time of payment? This custom being known to defendant, was incorporated into the contract the defendant made, and

became a part thereof, and the instruction should have been in accordance with it.    *Oxford Bank* v. *Haynes,* 8 Pick. 423.

The usage was one that should be upheld, for it was reasonable, convenient, and adapted to the facilities of business, and to promote just dealings between the parties.    *May & al.* v. *Wheeling Ins. Co.,* 9 Met. 354.

It may be true that evidence of an usage to set aside a plain principle of law is not admissible; but it was never supposed that parties, therefore, could not legally agree, in accordance with custom and usage, which had been adopted by one of them, that their rights should be different from what the law would make them, had there been no agreement at all.    The ground we take is supported by *Strong* v. *Ellis,* 6 Met. 396; *Williams* v. *Gilman,* 3 Greenl. 276; *Adams* v. *Otterback,* 16 How. 539; *Bank of Columbia* v. *Magruder,* 6 How. 180; *Loring* v. *Gurney,* 5 Pick. 15.

There was also the best of reasons, from the evidence, for the bank to suppose that in fact the defendant was the principal in this note.

As to the indorsement of September, 1847, it is contended, that if defendant had been previously discharged, nothing but an express promise could make him liable, and he relies on the statute of frauds.    Is this so?    Might he not *waive* his privilege, and become bound again, by paying a part?    Having made no explanation at the time he paid it, we contend the instruction as to the *effect* of it was wrong.    The mere fact that it was McIntosh's money, without making it known, should not shield him from the effect legally deducible from a part payment.

TENNEY, C. J.—The decision of the questions presented to the Court, when this case was before it upon exceptions, at a previous time, is conclusive upon the point, that the time of payment was enlarged by the receipt of the interest in advance, as a valuable consideration, and the word "renewed" written upon the note.    This was the construction put upon

what appeared upon the note itself, and evidence is not admissible to control or vary its legal import.

The defence on the last, as on the former trial, was, that the defendant was surety only upon the note, one McIntosh being the principal, and that the same was well known to the bank at the time the note was discounted; and that, by an agreement with McIntosh, it extended the time of payment, beyond that stipulated in the note, without the knowledge or consent of the defendant.

The attempt to prove, that the defendant was surety only upon the note, was resisted by the plaintiffs, but was allowed. This ruling was in conformity with what may now be regarded as a settled principle, which is recognized in this case, reported between these parties referred to.

The doctrine in law is too well established to require the citation of authorities, that if the holder of a promissory note, knowing that one of the makers is a surety for another on the same note, enters into a valid contract with the principal, without the knowledge of the surety, to enlarge the time of payment, the surety's liability to the holder is terminated. This is affirmed in this case before cited. The reasons for the doctrine, as given by Chancellor KENT, in *King* v. *Baldwin*, 2 Johns. Ch. 560, are entirely satisfactory.

The jury found, under the instructions, the facts relied upon to sustain the defence.

But the plaintiffs invoked a rule of the bank, and an usage corresponding therewith, before the date of the note, "to take no accommodation note so written; but to require all notes to be joint and several, and all the promisors, so far as the bank was concerned, were dealt with and treated as principals;" and they introduced evidence tending to prove such rule and usage, and also that the defendant was a customer of the bank, having notes there.

Upon this branch of the case, the jury were instructed, that the usage and practice of the bank, to take notes, signed by the promisors, without any distinction thereon indicating who

was principal and who was surety, would not alone be sufficient to enable it to hold the surety, known by it to be such, after it had extended the time of payment beyond that specified in the note, by an agreement with the principal, without the knowledge and consent of the surety, even if the surety had knowledge of such usage and practice.

This instruction, as an abstract principle of law, is entirely in accordance with well settled legal rules; for the relation of surety in one maker to another, on the same note, which is not necessary to appear upon the note, but as we have seen may be proved *aliunde*, the instruction was a simple application of the rule, that a surety will be discharged, by the enlargement of the time of credit, as supposed in the instruction.

If the instructions were not sufficiently full and specific, in the opinion of the plaintiffs' counsel, to meet the particular aspects of their case, he could have requested such instructions as he thought appropriate. Not having done this, they cannot be treated as aggrieved for want of further instructions, unless, from the evidence of the case, those given, it is apparent, must have been understood by the jury, as having a meaning different from that imparted, simply by the terms used. And it is insisted, that the rule and usage of the bank authorized the enlargement of the time of payment, under an agreement between the principal and holder, the surety having no knowledge thereof, without impairing the liability of the latter; and that the instruction was regarded by the jury as a denial of this construction of the rule. Upon the hypothesis, that the presiding Judge was so understood by the jury, which is not admitted, we propose to consider the rule and its meaning.

The rule is in one part a prohibition; and in another a requirement. The former is, that no accommodation note, so written, can be taken; the latter, that all notes shall be joint and several. So far, it has reference to the form of the notes, and the character of the contract made by those whose names may be upon them. And where the whole is considered together, it is manifest, that the design was, that the notes

should be so made and executed, that one person taking a liability thereon, should not be holden as a maker, and another as indorser or guarantor, but all should be original promisors. This mode would effectually relieve the bank from the trouble and expense of the steps necessary to be taken to fix the liability of indorsers, and prevent an exposure to loss by the omission of any of those steps, or the want of proof thereof, by making those who were signers on the notes absolutely, instead of some of them being conditionally holden. This was obviously one design at least of the rule. And, in this respect, the note in question conformed thereto.

The rule does not forbid the designation of one as principal, and another as surety, on the notes, but provides, in the notes to be taken, so far as the bank was to be concerned, that all the promisors shall be dealt with and treated as principals.

The general rule of law allows the holder of a promissory note to treat the maker as principal, who signs it as surety, and to deal with him as such. He is not required to give him any notice of non-payment by the maker, who holds the relation of principal to him, or to make demand of payment of the former, to hold the latter. As long as the holder is passive, all his remedies remain. *English* v. *Darley*, 2 B. & P. 62. Under the contract in the note, his rights against the surety are as ample against him as the principal. But as this rule of law gives no power to the holder to alter the note, by putting off the time of its maturity, thereby making it a new and a different contract, the rule of the bank has precisely the same meaning in this respect, and can confer no greater power upon the bank. It is simply an affirmance of the common law principle as applicable to such notes as the bank, under it, designed to discount.

The plaintiffs' construction will make the words, " so far as the bank is concerned," purely redundant. This cannot be admitted. This language implies a restriction, that so far as others than the bank should be concerned, the rule should not apply to the prejudice of the latter. The law regards it

for the benefit of a surety, that he may pay the note at maturity, and immediately look to his principal for reimbursement. He consents, that he may be treated by the holder of a note signed by him as surety, as a joint promisor, and a principal in that contract; but he is concerned, that the contract shall not be changed, so that he shall be precluded from this mode of seeking indemnity, and the rule, by the terms themselves, excludes the interpretation contended for.    Allowing the bank to deal with sureties on the note, as principals, and to treat them accordingly, confers the power to do so in that contract to the fullest extent; but gives no right to make them parties to another contract, which increases their liability. Such construction would admit the bank to hold sureties perpetually liable, and at the same time deprive them of the right to pay the debt, and resort to their principal.

Was the defendant's liability revived by the indorsement upon the note, "1847, Sept.—Received $10,37, and interest till August 28th last, by J. L. Mallett?"    Under the instruction, that if the indorsement was for money furnished by McIntosh, the defendant was not made liable by the payment thereof, and the general verdict for the defendant, the jury found that this money was furnished by the principal on the note.

The bank was not injured by this payment through the agency of the defendant, when no longer holden on the note. The bank received this sum from its debtor, as a portion of the amount due from him; it was beneficial to the creditors, and effected no change in their rights to call for the balance. If the defendant omitted to inform the officer of the bank, at the time of its payment, that he acted therein as the servant of the principal, this could not operate to the prejudice of the plaintiffs so as to confer additional rights.

The evidence, that the indorsement made in September, 1847, was on account of a payment made by the principal, was properly allowed, as tending to prevent the jury from inferring that if the defendant paid his own money upon the note upon which he was once holden, he admitted that the

previous payments and renewals might have been made by his consent. *Exceptions overruled.*

RICE, APPLETON and MAY, J. J., concurred.